**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.**

Reflex MD, Inc. a Delaware Corporation,

Plaintiff,

v.

Dynamic Trading Enterprises, LLC, d/b/a Join Layla, a Pennsylvania limited liability company, and Gabriel Vaturi a/k/a Gabriel Zion Vaturi

Defendants.
_________________________________/

**COMPLAINT FOR COPYRIGHT INFRINGEMENT TRADE DRESS INFRINGMENT AND COMMON LAW CLAIMS**

Plaintiff, REFLEX MD, INC. ("RMI" or "Plaintiff"), a Delaware corporation, through undersigned counsel, sues Defendant Dynamic Trading Enterprises, LLC d/b/a Join Layla ("DTE"), a Pennsylvania limited liability company and Gabriel Vaturi ("Vaturi"), and in support thereof alleges as follows:

**THE PARTIES**

1. RMI is a corporation organized under the laws of the State of Delaware and offers Semaglutide, a pharmaceutical for the class of weight-loss drugs known as GLP-1 pharmaceuticals through its telehealth platform via www.reflexmd.com.

2. DTE is a Pennsylvania limited liability company that has been registered as a foreign limited liability company in Florida since April 12, 2023. Starting in or about 2022 DTE has operated a telehealth platform for selling semaglutide through the tradename name "Join Layla"

and the website www.joinlayla.com ("Defendant's Website"). The address of DTE's office in Florida as set forth on the Division of Corporations Website, www.sunbiz.org, was 3250 NE 1st Ave, Unit 305, Miami, Florida 33137. The current business address for DTE on the website is in Pinellas County, Florida as is Vaturi's address as DTE's designated authorized member manager ("AMBR"). On July 30, 2026, DTE amended its corporate filing with the Pennsylvania Secretary of State to set forth that its principal address is now located at 252 NW 29th Street, #9, Miami, Florida 33127.

3. RMI and DTE are competitors in that they sell competing products to the public at large through their respective websites.

4. Vaturi is a principal in DTE and the AMBR for DTE as set forth on the Division of Corporations' website.

**JURISDICTION AND VENUE**

5. This is an action arising under the provisions of 17 U.S.C. §106, 17 U.S.C. ¶501, 17 U.S.C. §1202, 17 U.S.C. §1203 and 15 U.S.C. §1125(a), all as more fully set forth in this complaint. Jurisdiction is conferred on this Court by 28 U.S.C. §§1331 and 1338.

6. With regard to the claims contained in the complaint consisting of unfair competition and tortious interference, this Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. §1367 because they are so related to the claims for copy infringement alleged in Counts I and II that they form part of the same case or controversy under Article III of the United States Constitution and the common law claims neither raise novel nor complex issues of state law, nor substantially predominate over the copyright infringement claims which are alleged in Counts I and II of this complaint.

7. This Court has personal jurisdiction over DTE pursuant to § 48.193(1)(a)(1), Fla. Stat. because:

a. Since at least 2022 DTE purposely conducted and carried on a business activity in Florida by operating, engaging in, and carrying on a telehealth platform business through its website www.joinlayla.com that is the subject of Plaintiff's copyright infringement claims. The website was and is used by DTE to promote, offer, and facilitate the sale of its products and services including Semaglutide to DTE's customers, including customers in Florida;

b. DTE expressly contemplated Florida customers in the Terms and Conditions provided at its website which governs, *inter alia*, customer participation in its commercial on-going subscription program. DTE's contacts with Florida were thus not limited to the passive accessibility of the infringing website by Florida residents;

c. DTE's Terms and Conditions expressly distinguished customers in Florida, New York, and Illinois from customers in other states with respect to eligibility for its program and the commercial health-insurance requirements applicable to such customers;

d. DTE specifically identified Florida as a jurisdiction in which it contemplated Florida customers would participate in and obtain services through DTE's commercial program and structured the terms governing its telehealth platform business accordingly;

e. DTE further maintained and published a Florida telephone number with a Miami-Dade County area code in connection with its business and website operations. This number is still present on DTE's currently effective Terms and Conditions;

f. DTE also designated and published a Miami, Florida address in its Terms of Use for receipt of notices of claimed copyright infringement under the Digital Millennium Copyright Act ("DMCA") in connection with the operation of its website; and

g. DTE now identifies in the records filed with the Pennsylvania Secretary of State that its business address is in Miami, Florida.

8. Plaintiff's claims arise out of or relate to the contacts alleged above because the website through which DTE purposefully conducted and administered its Florida-directed commercial activities is the same website and commercial instrumentality which infringed Plaintiff's copyrighted website and content.

9. This Court has personal jurisdiction over DTE pursuant to §48.193(1)(a)(2), Fla. Stat. because DTE committed tortious acts within Florida through the unauthorized reproduction, display, distribution, use, or exploitation of Plaintiff's copyrighted website and content in Florida which resulted in the sale of Semaglutide by DTE in Florida.

10. This Court has personal jurisdiction over DTE pursuant to §48.193(2), Fla. Stat. because DTE engaged in substantial and not isolated activity within Florida, including its continuing Florida business operations, Florida-directed commercial activities, Florida customer contact infrastructure, and other systematic activities within the State such that it is at home in Florida for all purposes and because its business office is now located in Florida.

11. The Court's exercise of personal jurisdiction over DTE would not impose an undue burden on DTE, and Florida has a legitimate interest in adjudicating disputes arising from DTE's activities within its borders.

12. Vaturi is an individual residing in Broward County, Florida. This Court has personal jurisdiction over him because he is resident in Florida and because he operates, conducts, and is engaged in a business or business venture in Florida as the owner and principal of DTE.

13. Vaturi is also subject to personal jurisdiction pursuant to § 48.193(1)(a)(2), Fla. Stat. to the extent he committed tortious acts within Florida through the unauthorized reproduction, display, distribution, use, or exploitation of Plaintiff's copyrighted website and content in Florida involving contributory and vicarious copyright infringement. On information and belief, Vaturi,

from Florida, was responsible for providing approvals to DTE for, or other assistance with copying the Plaintiff's www.reflexmd.com website and DTE's publishing the copied website in or about September 2023.

14. Venue in this district is proper since DTE's address on file with the State of Pennsylvania is now in Miami, Florida and because Vaturi is resident in Broward County, Florida.

## GENERAL ALLEGATIONS

15. In 2023, Plaintiff commissioned, developed, and created the Plaintiff Website as an integral part of its business operations, branding, marketing, customer acquisition, and sales activities involving Semaglutide through the Plaintiff Website.

16 Plaintiff Website contained original copyrightable material, including, without limitation, original text, written content, graphics, selection, coordination, and arrangement of content, and other original expressive elements (collectively, the "Copyrighted Website Content").

17. Plaintiff owns the rights in the Copyrighted Website Content, by valid assignment from the person that created such content.

18. During 2023, Plaintiff continuously invested substantial time, effort, expertise, and financial resources in developing, maintaining, promoting, and optimizing the Plaintiff Website including the creation and selection of original written content, visual elements, organization, arrangement, and other protectable expression embodied in the Plaintiff Website in order to attract prospective customers and facilitate sales. As part of those efforts, Plaintiff engaged in substantial search-engine optimization ("SEO"), website optimization, content development, and related marketing activities intended to increase the Plaintiff Website's visibility in internet search results, attract relevant customer traffic, and develop the Website's commercial value.

19. Plaintiff's optimization in website investment activities included the development and organization of website content, page structure, navigation, product and/or service information, search-oriented content, and other features designed to enhance the website's usefulness to customers and its visibility through internet search engines, facilitate customer acquisition and retention, and other optimization and promotional activities intended to increase the commercial effectiveness, search visibility, and customer-conversion value of Plaintiff Website.

20. Plaintiff also invested substantial resources in developing the Website as a commercial platform through which existing and prospective customers could locate Plaintiff, obtain information concerning Plaintiff's products and services, and place or facilitate orders, including repeat orders.

21. Plaintiff Website served not merely as an informational website, but as an important means by which it attracted prospective customers, communicated information concerning its products and/or services, and maintained relationships with existing customers.

22. Through its investment in the Plaintiff Website including the Website's content, and optimization, Plaintiff developed valuable Internet visibility, customer traffic, goodwill, and an established online pathway through social media ads connecting existing and prospective customers with Plaintiff's business.

23. DTE copied and reproduced substantial portions of Plaintiff Website and its copyrighted content for use on DTE's competing website.

24. Plaintiff first learned of DTE's possible unauthorized copying and use of Plaintiff's protected website content on or about November 3, 2023. The precise date on which DTE commenced its infringing activities is unknown to Plaintiff, but Plaintiff believes, based on information presently available, that DTE's infringement began no later than September 2023 and

may have commenced earlier. The precise date on which DTE first published, displayed, or otherwise used the infringing website will be established through discovery.

25. DTE was operating its www.joinlayla website prior to the infringement period wherein its own website's selection, coordination, and arrangement of text and photographs was in no way similar to the Plaintiff's protected website coordination and selection and arrangement of text and photographs. Thereafter, DTE copied substantial portions of the Plaintiff Website's protected text, html, and appearance and reproduced, adapted, displayed, and/or used such materials in connection with DTE's own competing commercial website (the "Infringing Website") without the Plaintiff's authorization.

26. DTE's use of copied and/or substantially similar website content to sell a product (compounded Semaglutide) which directly competed with Plaintiff's product also placed DTE in a position to compete for Internet users and prospective customers seeking the products and/or services offered by Plaintiff.

27. DTE knew, or should have known, that the copied materials originated from Plaintiff and that Plaintiff had invested substantial financial resources in developing and using its Website in connection with its telehealth business.

28. DTE's conduct created a substantial risk that Internet users searching for Plaintiff's products and/or services or information associated with Plaintiff's business would encounter DTE's website instead of, and/or in competition with, the Plaintiff Website.

29. DTE's conduct further interfered with Plaintiff's ability to realize the full commercial benefit of the traffic, customer recognition, repeat-order activity, goodwill, and other business opportunities generated through Plaintiff Website-development and optimization efforts.

30. DTE's conduct was particularly harmful with respect to Plaintiff's existing and repeat customers because such customers had an established reason and intention to return to the Internet to locate Plaintiff and obtain additional products and/or services from Plaintiff.

31. DTE's conduct was likely to cause prospective customers to believe that DTE was either Plaintiff, affiliated with Plaintiff, or offered services sponsored or approved by Plaintiff.

32. DTE did not merely maintain the infringing website as a passive Internet presence but actively promoted and directed prospective customers to the infringing website through its on-line advertising activities such as advertisements through Facebook that contained hyperlinks directing viewers to DTE's website.

33. DTE thereby used the infringing website as a destination for its advertising and customer-acquisitions and to promote DTE's directly competing business.

34. DTE's use and promotion of the infringing website were commercial in nature and were under taken for the purpose of attracting prospective customers, generating customer inquiries, and/or sales, and obtaining commercial benefit from traffic to the website.

35. Upon information and belief, DTE's online marketing activities generated impressions, clicks, website visits, customer inquiries, transactions, and/or commercial activity associated with DTE's website during the period of infringement.

36. DTE's infringement of Plaintiff's protected website material contributed to attracting organic-search visitors and generating customer transactions, resulting in profits attributable to the infringement of Plaintiff Website.

37. Upon discovering the full extent of DTE's copying in early December 2023, Plaintiff promptly demanded DTE cease its unauthorized use of the Plaintiff Website. While DTE thereafter discontinued, removed and/or ceased displaying the copied content, this cessation did not

compensate Plaintiff for the damages and other harm caused by the unauthorized copying of Plaintiff's copyrighted website including but not limited to diversion, interference and lost business opportunities.

38. The precise duration and full extent of DTE's unauthorized use, the number of Internet users exposed to DTE's website, the traffic received by DTE, the business generated or benefits obtained by DTE, and the extent of resulting diversion and harm to Plaintiff are matters substantially within DTE's possession, custody, or control and will be further established through discovery.

39. On information and belief, Vautrin, directed and/or approved the copying of the Plaintiff Website.

DEMAND FOR JURY TRIAL

40. Plaintiff demands trial by jury of all issues so triable in this case.

**COUNT I**
**COPYRIGHT INFRINGEMENT—HTML LITERARY WORK**
**(17 U.S.C. §§ 106 and 501)**
**(As to Defendant Dynamic Trading Enterprises, LLC)**

41. Plaintiff Reflex MD, Inc. realleges and reaffirms paragraphs 1 through 3, 5, 7 through 11 and 14 through 38 and 40 of this complaint as if fully set forth herein.

42. Plaintiff owns the copyright in the original, human-authored HTML literary work entitled "ReflexMD Website Text and HTML Code – 2023 Version" of Plaintiff Website at www.ReflexMD.com (the "HTML Work"). The HTML Work contains original expression, including human-written passages, original comments, and embedded text.

43. Plaintiff is the claimant of the copyright through a written assignment.

44. The United States Copyright Office registered the HTML Work under Registration No. TX 9-639-199 having an effective registration date of September 17, 2026. A copy of the registration certificate is attached as Exhibit A.

45. The original expression identified in this Count I was embodied in the version of the HTML Work that existed when DTE engaged in the unauthorized copying alleged below and is included within the authorship covered by the registration.

46. Before engaging in the alleged infringement, DTE had access to the HTML Work through Plaintiff's publicly accessible website.

47. On information and belief, beginning in or about September 2023, DTE, acting through its principal, employees, agents, or contractors, copied substantial portions of the HTML Work and incorporated those portions into the HTML used to operate DTE's website at www.joinlayla.com.

48. DTE's website reproduced numerous distinctive features of Plaintiff Website, including matching text, page arrangements, and formatting so that DTE's infringing website was strikingly similar to Plaintiff Website.

49. Based on the foregoing similarities and DTE's opportunity to access Plaintiff Website, Plaintiff alleges on information and belief that DTE copied original, protectable portions of Plaintiff Website's HTML and/or CSS code and used those portions to generate DTE's infringing website without Plaintiff's authorization. Moreover, DTE stored and deployed copies of the infringing text and HTML on servers used to operate its website and caused additional copies to be transmitted to and reproduced by visitors' browsers when they accessed the affected pages.

50. On information and belief, DTE reproduced Plaintiff's search-optimized text and HTML on pages used to market DTE's services and solicit customer orders. Based on those reproductions and their commercial use, DTE obtained revenue attributable, in part, to its use of the infringing website text and HTML code. The extent of that revenue and the contribution of

organic-search traffic are reflected in analytics, conversion, and financial records principally within DTE's possession.

51. Plaintiff does not presently possess the HTML and CSS files used to generate DTE's website during the infringement period. The precise extent and manner of the alleged code copying are expected to obtain evidentiary support through discovery of Defendant's website files, development records, and related communications.

52. Plaintiff did not authorize, license, or consent to DTE's reproduction or use of the copyrighted HTML Work.

53. As a result of DTE's infringement of the copyrighted work identified in this Count, DTE obtained commercial benefits, including customer transactions generated through organic-search traffic attracted by the infringing website material. Plaintiff seeks recovery of DTE's profits attributable to that infringement pursuant to 17 U.S.C. § 504(b).

54. DTE's unauthorized reproduction and public display of Plaintiff's protected work infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 and constitute copyright infringement under 17 U.S.C. § 501.

55. As a direct and proximate result of DTE's conduct, including its active promotion of the infringing website, Plaintiff has suffered damages, including lost business opportunities and other economic harm, and DTE obtained benefits attributable to its unauthorized use of Plaintiff's copyrighted material, in amounts to be established through discovery and at trial.

WHEREFORE Plaintiff respectfully requests judgment against Dynamic Trading Enterprises, LLC and an award all relief available under 17 U.S.C. 504(b) including: (a) Plaintiff's actual damages resulting from Dynamic Trading Enterprises, LLC's copyright infringement pursuant to 17 U.S.C. § 504(b) including, to the extent established by the evidence, the reasonable

fair market value of license authorizing Dynamic Trading Enterprises, LLC's actual use of the copyrighted work, together with any profits of Dynamic Trading Enterprises, LLC attributable to the infringement that are not taken into account in computing Plaintiff's actual damages.; (b) Any and all profits of Dynamic Trading Enterprises, LLC attributable to the infringement that are not taken into account in computing Plaintiff's actual damages, pursuant to 17 U.S.C. § 504(b); (c) Prejudgment and post-judgment interest to the extent permitted by law; (d) Plaintiff's costs and such attorneys' fees as may be recoverable under applicable law; and (e) Such other equitable relief as the Court deems appropriate, to the extent warranted by the circumstances.

**COUNT II**
**COPYRIGHT INFRINGEMENT—WEBSITE COMPILATION**
**(17 U.S.C. §§ 106 and 501)**
**(As to Defendant Dynamic Trading Enterprises, LLC)**

56. Plaintiff Reflex MD, Inc. realleges and reaffirms paragraphs 1 through 3, 5, 7 through 11 and 14 through 38 and 40 of this complaint as if fully set forth herein.

57. Plaintiff owns the copyright in the original selection, coordination, and arrangement of text and photographs comprising the website compilation entitled "Reflex MD's Website (2023)" (the "Website Compilation"), displayed at www.ReflexMD.com during the infringement period.

58. The Website Compilation contains original compilation authorship, including the selection of particular text and photographs, the grouping and pairing of those materials within particular sections, and their placement and sequence within and across the website's pages.

59. These choices, considered together, reflect creative authorship and are not dictated solely by functional requirements, standard website conventions, or the subject matter of the underlying materials.

60. Plaintiff acquired ownership of the Website Compilation through written assignment.

61. The United States Copyright Office registered the Website Compilation under Registration No. TX 9-639-202 having an effective registration date of September 17, 2026. The registration covers the website's selection, coordination, and arrangement of text and photographs.

62. The original selection, coordination, and arrangement infringed by DTE were present in Plaintiff Website during the 2023 infringement period and are included in the work covered by the registration.

63. Before reproducing the Website Compilation, DTE had access to Plaintiff's publicly accessible website at www.ReflexMD.com.

64. Without Plaintiff's authorization, DTE copied substantial portions of the Website Compilation including Plaintiff's original combinations of selected text and photographs, their grouping and pairing within corresponding sections, and their placement and sequence, including the arrangement and positioning of the Plaintiff Website's photographs and their accompanying text, and incorporated them into DTE's infringing website at www.joinlayla.com

65. The similarities concern Plaintiff's protectable compilation authorship considered as a whole. DTE's website reproduced selections, combinations, and arrangements of text and photographs strikingly similar to the Plaintiff Website.

66. DTE reproduced and publicly displayed the copied compilation authorship on its website to advertise and sell Semaglutide in direct competition with the Plaintiff.

67. Plaintiff did not grant DTE a license or otherwise authorize DTE to reproduce or publicly display the Website Compilation.

68. DTE's unauthorized reproduction and public display of Plaintiff's protected work infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 and constitute copyright infringement under 17 U.S.C. § 501.

69. As a direct and proximate result of DTE's conduct, including its active promotion of the infringing website, Plaintiff has suffered damages, including lost business opportunities and other economic harm, and DTE obtained benefits attributable to its unauthorized use of Plaintiff's copyrighted material, in amounts to be established through discovery and at trial.

WHEREFORE Plaintiff respectfully requests judgment against Dynamic Trading Enterprises, LLC and an award all relief available under 17 U.S.C. 504(b) including: a. Plaintiff's actual damages resulting from Dynamic Trading Enterprises, LLC's copyright infringement pursuant to 17 U.S.C. § 504(b) including, to the extent established by the evidence, the reasonable fair market value of license authorizing Dynamic Trading Enterprises, LLC's actual use of the copyrighted work, together with any profits of Dynamic Trading Enterprises, LLC attributable to the infringement that are not taken into account in computing Plaintiff's actual damages; b. Any and all profits of Dynamic Trading Enterprises, LLC attributable to the infringement that are not taken into account in computing Plaintiff's actual damages, pursuant to 17 U.S.C. § 504(b); c. Prejudgment and post-judgment interest to the extent permitted by law; d. Plaintiff's costs and such attorneys' fees as may be recoverable under applicable law; and e. Such other equitable relief as the Court deems appropriate, to the extent warranted by the circumstances.

**COUNT III**
**REMOVAL OF PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION**
**(17 U.S.C. § 1202)**
**(As to Defendant Dynamic Trading Enterprises, LLC)**

70. Plaintiff realleges and reaffirms the allegations set forth in paragraphs 1 through 3, 5, 7 through 11 and 15 through 31 and 40 of this complaint as if fully set forth herein.

71. Plaintiff's 2023 website contained copyright management information ("CMI"), within the meaning of 17 U.S.C. §1202(c) including a copyright notice displaying the © symbol and identifying Plaintiff as the copyright owner of the website and its copyrighted content.

72. In connection with that copying and reproduction, DTE intentionally omitted, concealed or altered Plaintiff's CMI, including Plaintiff's copyright notice and identification as copyright owner, without Plaintiff's authority or permission.

73. DTE thereafter reproduced, distributed, displayed, and/or caused to be displayed copies of Plaintiff's copyrighted website content from which Plaintiff's CMI had been removed or altered.

74. DTE knew, or had reasonable grounds to know, that removal of Plaintiff's CMI and the subsequent use and display of the copied content without that CMI would facilitate or conceal DTEs' unauthorized reproduction, display, and use of Plaintiff's copyrighted website content.

75. DTE has violated 17 U.S.C. § 1202(b)(1) and, to the extent Defendants distributed or publicly displayed copies of the copyrighted content knowing that the CMI had been removed or altered without authority, § 1202(b)(3).

76. As a direct and proximate result of DTE's violations of 17 U.S.C. § 1202, Plaintiff has suffered injury and damages and is entitled to the remedies available under 17 U.S.C. § 1203.

WHEREFORE Plaintiff respectfully requests judgment against DTE and an award of all relief available under 17 U.S.C. § 1203, including: (a) Plaintiff's actual damages and any profits of Defendants attributable to the violations, or statutory damages as elected and permitted by law; (b) Plaintiff's costs and reasonable attorneys' fees as permitted by law; and (c) Such other and further relief as the Court deems just and proper.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**
**(As to Defendant Dynamic Trading Enterprises, LLC)**

77. Plaintiff realleges and reaffirms the allegations of paragraphs 1 through 3, 5 through 11, 14 through 21, 23, and 40 as if fully set forth herein.

78. Plaintiff maintained ongoing advantageous business relationships with customers who had previously purchased Plaintiff's Semaglutide product utilizing the Plaintiff Website and who returned to Plaintiff Website to reorder the same product.

79. Based upon the customers' prior purchases, course of dealing, and recurring need for Plaintiff's product, Plaintiff had a reasonable expectation of continued business and repeat purchases from its Semaglutide customers.

80. Plaintiff Website served as an established means through which its existing customers identified Plaintiff, returned to Plaintiff's business, and placed repeat orders for Plaintiff's products.

81. DTE knew that Semaglutide was a pharmaceutical that would be re-purchased by customers on a routine basis for weight loss and weight loss management and that Plaintiff Website was used by Plaintiff's existing customers for repeat purchases.

82. DTE intentionally interfered without justification with the advantageous business relationship between Plaintiff and its customers by preparing and utilizing a website that closely replicated the appearance, presentation, content, and commercial identity of Plaintiff Website and used that Website to offer Semaglutide, thereby causing confusion and interfering with Plaintiff's established advantageous business relationships with its customers relationships

83. As a direct and proximate result of DTE's interference, Plaintiff has been damaged in that Plaintiff lost sales, lost profits and other consequential damages on an on-going basis.

WHEREFORE, Plaintiff demands judgment against Defendant Dynamic Trading Enterprises, LLC for compensatory damages, including lost profits and other damages proximately resulting from Defendant's tortious interference, together with prejudgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT V**
**TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT**
**(15 U.S.C. §1125(A))**
**(As to Defendant Dynamic Trading Enterprises, LLC)**

84. Plaintiff realleges and reaffirms the allegations of paragraphs 1 through 3, 5, 7 through 11, 14 through 15, 18 through 19, 22 through 23, 25 and 40 as if fully set forth herein.

85. Plaintiff had developed and used a distinctive and recognizable overall visual presentation for its Website in connection with the advertising, promotion, offering, and sale of its Semaglutide Product (the "Plaintiff Trade Dress").

86. The Plaintiff Trade Dress consisted of the overall combination, arrangement, and visual presentation of multiple elements that, when viewed collectively, create a distinctive commercial impression identifying Plaintiff and its business to consumers and includes the distinctive combination and arrangement of the website's color palette and color combinations; placement and presentation of headings, text, images, and graphic elements; page composition and visual hierarchy; arrangement and sequencing of content; presentation of product information and purchasing or reordering features; spacing and relationship among visual elements; and the consistent overall appearance and presentation used throughout Plaintiff Website.

87. Plaintiff's trade-dress rights arise from the distinctive overall combination, selection, arrangement, and presentation of the foregoing nonfunctional elements and the resulting total commercial impression concerning the procurement of Semaglutide.

88. The elements comprising the Plaintiff Trade Dress were selected and arranged to create a consistent and recognizable visual identity for Plaintiff and were not dictated by the functional operation of the website.

89. The Plaintiff Trade Dress is primarily nonfunctional. The particular aesthetic combination, arrangement, placement, coloring, spacing, and presentation of the elements

comprising the Plaintiff Trade Dress are not essential to the operation of an online website, nor are they necessary for competitors to advertise, market, offer, or sell competing products or services.

90. Numerous alternative website designs, color combinations, arrangements, layouts, and visual presentations were and remained available to DTE without use of the Plaintiff Trade Dress. DTE had its own website prior to "converting" its website to a website having the same trade dress as the Plaintiff Website.

91. Plaintiff's particular combination of these elements served a source-identifying purpose by creating a consistent commercial presentation through which customers encountering Plaintiff Website recognized and associated the website with Semaglutide and the Semaglutide ordering services offered through the Website.

92. Through Plaintiff's use, promotion, advertising, marketing, search-engine optimization, customer interactions, and commercial operation of the website, the Plaintiff Trade Dress became associated with Plaintiff and its products and services and served as an identifier of source.

93. Plaintiff Website was particularly important to its relationship with existing and repeat customers because customers familiar with Plaintiff Website could return to the website to locate, purchase, and reorder Plaintiff's products through the familiar commercial presentation associated with Plaintiff.

94. DTE had access to Plaintiff's publicly accessible website and, rather than independently developing a distinct commercial presentation for its own website, adopted and used a website presentation that copied or closely imitated the distinctive overall combination and arrangement comprising the Plaintiff Trade Dress.

95. DTE's imitation was not limited to the use of isolated commonplace website features. DTE reproduced multiple elements of Plaintiff's distinctive presentation in combination, resulting in an overall commercial impression substantially similar to that of Plaintiff Website.

96. DTE's adoption of the Plaintiff Trade Dress was sufficiently extensive that consumers encountering DTE's website could reasonably believe that DTE’s website, products, and/or business were affiliated with, sponsored by, authorized by, connected with, or otherwise associated with Plaintiff.

97. The similarity caused or was likely to cause confusion among customers familiar with Plaintiff Website, including repeat customers who had previously encountered Plaintiff's distinctive website presentation in connection with obtaining or reordering Plaintiff's products.

98. DTE intentionally adopted the foregoing similarities with knowledge of Plaintiff's preexisting website and commercial presentation. DTE's copying of multiple elements of Plaintiff Website in combination is evidence that the similarities were not coincidental especially since the DTE had a completely different website prior to infringing the Plaintiff Website.

99. DTE's use of the confusingly similar trade dress was likely to divert consumers, including existing and repeat customers, interfere with Plaintiff's customer relationships, and permit DTE to obtain commercial benefits from the goodwill and source-identifying significance associated with the Plaintiff Trade Dress.

100. DTE’s unauthorized use of trade dress confusingly similar to the Plaintiff Trade Dress constituted trade dress infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

WHEREFORE PLAINTIFF demands: (a) A judgment that Dynamic Trading Enterprises, LLC has infringed Plaintiff's protectable trade dress and has engaged in false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (b) An award, pursuant to 15 U.S.C. § 1117(a), of Defendant's profits attributable to the unlawful conduct, Plaintiff's actual damages sustained as a result of such conduct, and the costs of this action, subject to the principles of equity; (c) An accounting of Defendant's profits attributable to Defendant's infringement and unlawful use of Plaintiff's trade dress; and (d) Such other and further relief as the Court deems just and proper.

**COUNT VI**
**UNFAIR COMPETITION UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Fla. Stat. § 501.204)**
**(As to Defendant Dynamic Trading Enterprises, LLC)**

101. Plaintiff reaffirms and realleges the allegations of paragraphs 1 through 3, 5 through 11, 14 through 16, 22 through 23, 28, 31 and 40 of this complaint as if fully set forth herein.

102. DTE has been engaged in trade or commerce by advertising, marketing, and selling Semaglutide, a pharmaceutical made by a compounding pharmacy(s), to Florida customers through its website www.joinlayla.com since 2022.

103. In or about September 2023, DTE inexplicably adopted the layouts, visual elements, text, and ordering flow from Plaintiff Website.

104. DTE's substantially imitative website was likely to cause confusion to consumers as to whether DTE was Reflex MD (Plaintiff) or was somehow affiliated with Reflex MD, or that the consumers had reached the website they actually intended to reach, namely, the Plaintiff Website. That impression could extend to the expected standard of services consumers had come to expect or were expecting to receive from the Plaintiff.

105 DTE's website presentation was likely to mislead consumers acting reasonably under the circumstances concerning the source, sponsorship, or affiliation of DTE's services.

106. DTE's presentation of its services in this manner was deceptive.

107. As a direct result of that conduct, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Dynamic Trading Enterprises, LLC and award: (a) Actual damages pursuant to Section 501.211(2), Florida Statutes, including lost profits already sustained as a direct result of Dynamic Trading Enterprises, LLC's deceptive and unfair trade practices and resulting diversion of sales from Plaintiff, in an amount to be proven at trial; (b) Reasonable attorney's fees and court costs pursuant to sections 501.2105 and 501.211(2), Florida Statutes; (c) Prejudgment and post judgment interest as permitted by law; and (d) Such other and further relief as this Court deems just and proper.

**COUNT VII**
**UNFAIR COMPETITION UNDER FLORIDA'S COMMON LAW**
**(As To Defendant Dynamic Trading Enterprises, LLC)**

108. Plaintiff realleges paragraph 1 through 3, 5 through 11, 14 through 16, 22 through 23, 26 and 40 of the allegations of this complaint as if fully set forth herein.

109. Plaintiff used its website to identify and promote its telemedicine services before DTE adopted the offending website.

110. DTE, a direct competitor of Plaintiff, substantially imitated Plaintiff Website by adopting the layouts, visual elements, wording, and ordering flow from Plaintiff Website to solicit customers for competing products and services.

111. DTE's conduct was likely to cause actual customers and consumers to believe that DTE was Plaintiff, was affiliated with Plaintiff, or offered services sponsored or approved by Plaintiff.

112. That likely confusion concerned more than the identity of the website. Customers who believed the businesses were connected could attribute their experiences with DTE's services—including the compounded medications supplied through DTE's pharmacy arrangements—to Plaintiff.

113. DTE's deceptive presentation by the offending website diverted customers from Plaintiff and caused Plaintiff to lose customers and associated revenue. It also exposed Plaintiff's goodwill to harm because customers could mistakenly attribute any negative interaction with DTE to Plaintiff.

114. DTE's deceptive competitive conduct and the resulting likelihood of customer confusion constitute unfair competition.

115. Plaintiff has suffered damages from the loss of customers and associated revenue.

**WHEREFORE**, Reflex MD requests judgment for damages against Dynamic Trading Enterprises, LLC including: (a) Actual damages pursuant including lost profits already sustained as a direct result of Dynamic Trading Enterprises, LLC's deceptive and unfair trade practices and resulting diversion of sales from Plaintiff, in an amount to be proven at trial; (b) Court costs; (c) Prejudgment and post judgment interest as permitted by law; and (d) Such other and further relief as this Court deems just and proper.

**COUNT VIII**
**CONTRIBUTORY INFRINGEMENT**
**(As to Defendant Gabriel Vaturi)**

116. Plaintiff realleges and reaffirms paragraphs 1 through 6, 12 through 40, 42 through 55 and 57 through 69 as if fully set out herein.

117. Vaturi currently owns and during the infringement period owned and directed DTE and controlled decisions concerning the development, content, and launch of the version of the www.joinlayla.com website which infringed Plaintiff Website.

118. Before DTE published the copied Plaintiff's protected website content, Vautrin was aware of Reflex MD's website.

119. On information and belief, Vaturi knowingly directed or approved the use of identified portions of Reflex MD's website in developing DTE's competing and infringing website.

120. Vaturi knew or had reason to know that the material he directed or approved for use had been taken from Plaintiff Website and that Plaintiff had not authorized its use.

121. By directing or approving the reproduction and display of the infringing materials, protected by both the Plaintiff's registered websites on DTE's website, Vaturi caused or materially contributed to DTE's direct copyright infringement.

122. As a result of Vaturi's infringement contributions, Plaintiff suffered injury for which it seeks the remedies available under the Copyright Act.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Gabriel Vaturi on this Count, and: (a) Hold Vaturi jointly and severally liable with Dynamic Trading Enterprises, LLC for Plaintiff's actual damages resulting from the infringement for which Vaturi is contributorily liable, pursuant to 17 U.S.C. § 504(b); (b) Award any profits attributable to that infringement that are recoverable from Defendant under 17 U.S.C. § 504(b) and are not taken into account in computing Plaintiff's actual damages, without duplicative recovery; (c) Award Plaintiff its recoverable attorneys' fees and costs pursuant to 17 U.S.C. § 505; (d) Award prejudgment and post judgment interest as permitted by law; and (e) Grant such other and further relief as the Court deems just and proper.

**COUNT IX**
**VICARIOUS COPYRIGHT INFRINGEMENT**
**(As to Defendant Gabriel Vaturi)**

123. Plaintiff realleges and reaffirms paragraphs 1 through 6, 12 through 40, 42 through 55 and 57 through 69 as if fully set out herein.

124. Upon information and belief, Vaturi directed DTE's operations and had the right and ability to supervise the content and operation of its website from its first inception in 2022 through the infringement period, including the authority to require removal of the copied material during the infringement period.

125. On information and belief, the infringing website attracted customers to Defendant DTE's products and services and generated sales. Vaturi as a member/officer with an economic interest in DTE personally received a direct financial benefit from the customer traffic and sales generated through that infringing website.

126. Vaturi is jointly and severally liable with Direct Infringer DTE for copyright infringement because Vaturi directly benefited from the infringing activity, had the right and ability to supervise or control the infringing activity, and failed to exercise that right and ability to prevent infringement of the Plaintiff Website.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Gabriel Vaturi on this Count, and: (a) Hold Vaturi jointly and severally liable with Dynamic Trading Enterprises, LLC for Plaintiff's actual damages resulting from the infringement for which Vaturi is vicariously liable, pursuant to 17 U.S.C. § 504(b); (b) Award any profits attributable to that infringement that are recoverable under 17 U.S.C. § 504(b) and are not taken into account in computing Plaintiff's actual damages, without duplicative recovery; (c) Award Plaintiff its recoverable attorneys' fees and costs pursuant to 17 U.S.C. § 505; (d) Award prejudgment and post

judgment interest as permitted by law; and (e) Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 29th day of October 2026 by:

/s/_______Jay M. Levy_____
Jay M. Levy
Jay M. Levy, P.A.
9130 S. Dadeland Blvd., #1209
Miami, Florida 33156
(o) (305) 670-8100
(m) (305) 979-0089
Email: jay@levylaw.com

And

/Susan Dierenfeldt-Troy/
Susan Dierenfeldt-Troy
Troy & Schwartz, LLC
9415 SW 72nd Street, #119
Miami, Florida 33173
(o) (305) 279-6433
(m) (305) 562-9561
Email: sdtroy@troyandschwartzlaw.com

# COMPLAINT EXHIBIT A

# Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**Registration Number**
**TX 9-639-199**
**Effective Date of Registration:**
September 17, 2026
**Registration Decision Date:**
September 23, 2026

## Title

**Title of Work:** ReflexMD Website Text and HTML Code—2023 Version

## Completion/Publication

**Year of Completion:** 2023
**Date of 1st Publication:** September 30, 2023
**Nation of 1st Publication:** United States

## Author

- **Author:** Derek Andriesian
  **Author Created:** markup code and embedded text
  **Work made for hire:** No
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1984

## Copyright Claimant

**Copyright Claimant:** Reflex MD, Inc.
2093 Philadelphia Pike, Unit 2388, Claymont, DE, 19703, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Troy & Schwartz
**Name:** Susan Dierenfeldt-Troy
**Email:** sdtroy@troyandschwartzlaw.com
**Telephone:** (305)279-4740
**Address:** 9415 SW 72nd Street
STE 119

Miami, FL 33173 United States

## Certification

**Name:** Susan Dierenfeldt-Troy
**Date:** September 17, 2026

**Correspondence:** Yes

# COMPLAINT EXHIBIT B

# Certificate of Registration

SEAL OF THE UNITED STATES COPYRIGHT OFFICE 1870

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**Registration Number**
**TX 9-639-202**

**Effective Date of Registration:**
September 17, 2026

**Registration Decision Date:**
September 23, 2026

## Title

**Title of Work:** Reflex MD, Inc.'s Website (2023)

## Completion/Publication

**Year of Completion:** 2023
**Date of 1st Publication:** September 30, 2023
**Nation of 1st Publication:** United States

## Author

- **Author:** Derek Andriesian
  **Author Created:** Selection, coordination, and arrangement of text and photographs
  **Work made for hire:** No
  **Citizen of:** United States
  **Year Born:** 1984

## Copyright Claimant

**Copyright Claimant:** Reflex MD, Inc.
2093 Philadelphia Pike, Unit 2388, Claymont, DE, 19703
**Transfer statement:** By written agreement

## Limitation of copyright claim

**Material excluded from this claim:** photograph(s), artwork

**New material included in claim:** selection, coordination, and arrangement of text and photographs

## Rights and Permissions

**Organization Name:** Troy & Schwartz, LLC
**Name:** Susan Dierenfeldt-Troy
**Email:** sdtroy@troyandschwartzlaw.com
**Telephone:** (305)279-4740

**Alt. Telephone:** (305)562-9561
**Address:** 9415 SW 72nd Street
STE 119
Miami, FL 33173

## Certification

**Name:** Susan Dierenfeldt-Troy
**Date:** September 17, 2026

**Correspondence:** Yes